UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| M.M.T., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants. | CASE NO. C16-5682 BHS <br><br> ORDER GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS AND GRANTING PLAINTIFF LEAVE TO AMEND |

This matter comes before the Court on Defendant United States ("Government") and Robert J. Taitano's ("Taitano") motions for judgment on the pleadings (Dkts. 51, 52). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On August 4, 2016, Plaintiff M.M.T. filed a complaint against Defendants Michael W. Hart ("Hart"), Susan R. Chacko ("Chacko"), Keri M. Delaney-Carlstrom ("Delaney-Carlstrom"), Maria E. Pule ("Pule"), William C. Krogh ("Krogh"), and Robert J. Taitano ("Taitano") for violation of her and her son's civil rights. Dkt. 1.

On January 5, 2017, Plaintiff filed an amended complaint adding the United States and the United States Postal Service ("USPS") as defendants and adding claims for negligence and intentional infliction of emotional distress. Dkt. 26. Plaintiff's four claims are as follows: (1) civil rights violation against Taitano; (2) civil rights violation against Hart, Chacko, Delaney-Carlstrom, Pule, and Krogh (collectively "Supervisor Defendants"); (3) negligence against the Supervisor Defendants; and (4) intentional infliction of emotional distress ("IIED") against Taitano. *Id*.

On June 7, 2018, the Government filed a notice of substitution substituting itself as Defendant for all claims sounding in common tort against the Supervisor Defendants. Dkt. 50.

On June 14, 2018, the Government and Taitano filed motions for judgment on the pleadings. Dkts. 51, 52. On July 9, 2018, Plaintiff filed a combined response. Dkt. 56. On July 13, 2018, the Government and Taitano replied. Dkts. 60, 61. On August 29, 2018, the Government filed a notice of supplemental authority. Dkt. 63.

## II. FACTUAL BACKGROUND[1]

On the morning of August 5, 2014, Plaintiff was at home in her bathroom, talking to her son M.C.T., when she heard him say "hi" to someone. Plaintiff came out of the bathroom and saw Taitano standing inside her home. Taitano was wearing his official USPS uniform. He had one hand on the door knob and one hand part of the way up the door, and he was very slowly and quietly closing the door. Plaintiff yelled at Taitano,

---

[1] This rendition of the facts is based exclusively on the allegations in Plaintiff's complaint.

"What the hell are you doing?" and told him to get out of her house. Taitano continued to close the door in the same manner and then slowly turned to face her. Taitano had a slight smirk on his face and just looked at her. Plaintiff began to yell at Taitano to leave her home for several minutes. Taitano eventually said slowly, "M.M.T., your door was unlocked." He did not say anything else but stood several feet into her doorway with a smirk on his face and looking at her. Taitano appeared very comfortable and did not seem upset that Plaintiff was yelling at him to leave.

Plaintiff now had become very afraid because Taitano was not leaving. Fearing for her safety and that of her son, Plaintiff grabbed her son by his shoulder and pushed him behind her into the hallway and then into the bathroom. She then stepped back into the living room and continued to yell at Taitano. By this point, Plaintiff thought she may have to defend herself, so she looked into the kitchen where she had a large knife. Taitano's gaze followed hers to the knife. As Plaintiff began to step towards the knife, Taitano turned and slipped out of her home.

Plaintiff had previously met Taitano on July 5, 2014. She and her mother were inside her home when she noticed a pink USPS slip on the floor. Plaintiff recognized the slip as notification of an unsuccessful package delivery attempt. Plaintiff then attempted to contact the mail carrier to get the package. They drove around the neighborhood until they contacted the carrier, who was Taitano. Plaintiff presented the pink slip and asked Taitano whether he had a package for her. Taitano then proceeded to ask several questions. He asked Plaintiff about her car and who was with her. Then he asked if she was the only one living in the apartment and if she was married. After asking these

questions, Taitano went to the delivery truck to retrieve the package but quickly returned and told Plaintiff that he could not find the package. When asked why, Taitano was not able to give a good reason why he delivered the pink slip but did not have the package.

Section 131.32 of the United States Postal Service handbook describes the conduct allowed by mail carriers. Under section 131.32, entitled "Actual Delivery," the handbook states "Enter premises for official duty only – except for authorized lunch periods." Here, Taitano entered Plaintiff's residence while on duty and in a full USPS uniform. He entered her residence while delivering mail.

USPS hired Taitano on January 1, 2000. Since the beginning of his employment, USPS knew that he had a pattern of inappropriate and sexually charged contact with women to whom he would deliver mail as an official USPS mail carrier.

The records available indicate that a mail customer named M.G. was the first to lodge a complaint in August 2002, where she stated that Taitano rubbed her back and kissed her on the cheek while delivering mail. M.G. complained and stated that she was "seriously distressed" about Taitano's conduct. The USPS manager at the time, Charles L. Osburn, had an official discussion with Taitano on August 15, 2002, and then returned him to work.

A second mail customer named R.K. complained on July 18, 2003, that Taitano made inappropriate comments and tried to hug her. R.K. stated that Taitano circled items in a Victoria's Secret catalog and wrote "you would look good in this" next to the items. No discipline was issued.

On August 2, 2003, a third mail customer named C.P. wrote a letter complaining that she felt Taitano was acting improperly when he spoke to her about ordering items from Victoria's Secret and that he grasped her hand and held it for an uncomfortable period of time. Records indicate that Taitano was placed on administrative leave, but it is not known whether this actually occurred.

On August 13, 2003, Taitano received a fourth complaint for incidents on July 26 and August 12 involving a woman named Ms. B. The complaint stated that Taitano hugged Ms. B and kissed her on the cheek. He then subsequently appeared at Ms. B.'s place of employment. Management investigated this incident and returned Taitano to work without discipline.

On September 27, 2004, Taitano was delivering mail when he sexually harassed a fifth woman named S.C. The investigation revealed that Taitano told her that she was very attractive and proceeded to ask about her sex life. Taitano then said, "I could make you feel real good. I'm clean." In response to the S.C. incident, Taitano was charged with Unacceptable Conduct and received a Notice of Proposed Removal from the USPS on November 3, 2004. Taitano then met with Tacoma Postmaster John E. Lee, who found the charges were fully supported by the evidence and warranted his removal. Lee wrote, "Your actions are unacceptable and are sufficient for me to conclude you can no longer meet the requirements of your position with the Postal Service."

Taitano appealed this decision to the USPS Dispute Resolution Team. In a lengthy review that discussed Taitano's numerous sexual harassment complaints, the Dispute Resolution Team stated, "The number of complaints lodged against him since he

was hired by the Postal Service indicated that he has a problem. [Taitano's] inappropriate actions potentially place both himself, and his employer in a position of liability." Despite being persuaded that Taitano had a "problem," that Taitano had acted inappropriately, that S.C.'s statement was found to be more credible than Taitano's, the Dispute Resolution Team "resolved" the grievance by reducing the Notice of Proposed Removal to a "14-day lost time suspension."

Starting in about 2006, Taitano began working as an alternate mail carrier for Jose Antonio Nieves-Perez's mail routes. In or around 2010, Perez-Nivens started receiving complaints from multiple women that Taitano was asking for and giving hugs, which progressed into offering massages and other sexualized and inappropriate comments. At least four different women were interviewed by police and confirmed Taitano's inappropriate conduct between 2010 and 2013: (1) A.B. at the Madrona Park Apartment Cabana told Nieves-Perez that Taitano was hanging out and acting unprofessional, including giving her candy with "I love you" written on the wrapper, and using the delivery of a package as a ruse to gain access into her residence between 2011 and 2012; (2) an unidentified female clerk at a doctor's office complaining about Taitano's strange behavior by staring at women and making staff feel uncomfortable; (3) an unidentified 7-11 store clerk who complained about Taitano being sexually aggressive and making remarks while he was wearing a USPS uniform and delivering mail, including asking to use the bathroom, making a comment about the clerk's hair, saying "you have a sexy ass, I want to get with that ass," and rubbing up against her butt as he passed her; and (4) S.P. at the City of Tacoma Solid Waste Refuse and Transfer Center complaining that Taitano

was asking inappropriate, intrusive, and odd questions while delivering mail in the summer of 2011. Nievens-Perez reported to police that he contacted his USPS supervisors about each of these complaints, but they "dropped the ball" and did nothing.

In February 2011, T.S. was also the victim of Taitano's repeated sexual advances. T.S. was the manager of the Fircrest Garden Apartments in Tacoma. She filed an official complaint with USPS, stating that Taitano had sexually harassed her on several occasions. In response to this complaint, USPS Customer Service Supervisor James Haslett issued a "Letter of Warning" for "Unsatisfactory Work Performance and Unacceptable Conduct."

In June 2013, S.F. reported that she was also sexually harassed and victimized by Taitano over the course of years while she was at her place of employment, a salon that she owned and operated. On one occasion in or around 2012, Taitano entered S.F.'s business while delivering mail there and began to rub her shoulder and back. S.F. said, "don't touch me." Later, Taitano was delivering the mail and came back when S.F. was alone. He walked back into her business and said that he was "coming to eat lunch" with her. S.F. declined and then complained to her normal mail carrier "Norma" about the inappropriate behavior. In April 2013, there were several incidents involving Taitano. On one occasion, S.F. was working when Taitano came up behind her and grabbed her butt with both hands. S.F. said, "what the hell," and Taitano claimed he was holding his hands out to measure her butt to see how much weight she had lost. On a separate occasion, Taitano entered the business just after delivering the mail and began to rub S.F.'s shoulders. S.F. would tell Taitano not to come inside her place of business, and he

was not welcome inside by S.F. Taitano did not need to enter the premises to deliver the mail. After these two incidents, S.F. contacted USPS and made a complaint, demanding that Taitano be permanently removed from her route.

S.F. spoke with Chacko, the Customer Service Manager for USPS's Tacoma Central Carrier Facility in June 2013. Chacko said that she could not remove Taitano from the route "because he is union." Chacko instead said that she would tell him to stay out of S.F.'s business and just deliver mail through the mail slot on the door. However, Chacko's "talk" with Taitano did not work, and he came into S.F.'s business on several more occasions. On one occasion, he came inside and said, "I saw you were alone, so I thought I would come in." He also handed S.F. mail and said, "is this from your mortgage company?"

On June 27, 2013, Michelle Brooks, a USPS Postal Inspector, drafted an investigative memorandum to Chacko that memorialized receiving several complaints from S.F. and others on S.F.'s behalf between May and June 2013. The memo ended by saying that the "information is being given to Postal Management to investigate further."

On July 31, 2013, James Spratt, a USPS "Assistant Special Agent in Charge," wrote a memorandum for Alexis Delgado, human resources manager. Mr. Spratt stated, "Chacko is aware of the situation and has talked to S.F. about her concerns, but S.F. remains unhappy and continues to feel unsafe with Taitano delivering mail near her business and residence." Mr. Spratt also stated that his office "does not plan to investigate this matter at this time" but that a response was required from Ms. Delgado. Spratt ended with "[i]n the event additional information or evidence is developed that

would require investigation of the employee's conduct beyond what was originally alleged, please contact me."

In June 2014, C.C. made a complaint to USPS about Taitano's unwanted flirting and sexual advances. One time, Taitano attempted to get into her home to use her bathroom. Taitano did not need to enter C.C.'s home to deliver the mail. On June 10, 2014, Hart called C.C. and learned about the inappropriate sexual advances, as well as the fact that Taitano had attempted to gain entry into her home. Hart told several USPS personnel about the C.C. complaint, including Chacko, DeLaney-Carlstrom, Pule, and Krogh. Hart included Chacko on the communications because "[s]he had taken over the last harassment complaint: S.F. on which I did an investigative interview in July 12, 2013."

At the time of Taitano's conduct that gave rise to this complaint, his supervisor was DeLaney-Carlstrom. Plaintiff also alleges that Chacko was Taitano's supervisor as well. Delany-Carlstrom was the supervisor for about one year and was aware of several previous complaints involving similar type of activity and conduct by Taitano. When interviewed by police, Delany did not answer why she or anyone else at the USPS never contacted the police about Taitano's prior conduct. Chacko was also aware of at least two instances of sexual harassment by Taitano right before he entered M.M.T.'s house and also did nothing.

### III. DISCUSSION

The Government moves to dismiss Plaintiff's claims against the Supervisor Defendants for violations of her civil rights and negligence. Dkt. 51. Taitano moves to

dismiss Plaintiff's claims for violations of her civil rights and IIED. Plaintiff concedes her claims based on the Ninth Amendment and negligence. Dkt. 56 at 9 n.2. Therefore, the Court grants the motions on these claims and will address the merits of Plaintiff's claims for a violation of the Fourth Amendment and IIED.

A. Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed. *Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v.*

*Twombly,* 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

**B.     Fourth Amendment**

The Government and Taitano move to dismiss Planitiff's civil rights claims based on a violation of the Fourth Amendment because (1) there is no express or implied cause of action against any defendant and (2) all defendants are entitled to qualified immunity. Dkt. 51, 52. The Court will only address the qualified immunity issue because the Government and Taitano are obviously entitled qualified immunity and it is unnecessary to engage in a detailed, multi-factor analysis to determine whether an implied cause of action exists.

Qualified immunity shields a government official's conduct unless clearly established law would have put "every reasonable official" on notice that what he or she was doing violated a constitutional right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A right is "clearly established" only where existing precedent places the question "beyond debate." *Id.* at 741. The Supreme Court has repeatedly held that clearly established law may not be defined "at a high level of generality." *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018); *City of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015). Instead, courts must look at the "particular context" at issue and determine the question within the "specific context" of the case. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

In this case, Plaintiff has failed to show that Fourth Amendment law clearly established that any of Defendant's conduct violated Plaintiff's rights. First, Plaintiff

argues that Taitano should have known that he could not enter her home to conduct an unreasonable search. Dkt. 56 at 33. Plaintiff, however, has failed to allege any facts to show that Taitano's entry was an investigatory search. Instead, Taitano was a postal delivery agent who allegedly entered her home unlawfully for sexually motivated reasons. Plaintiff has failed to submit or cite any authority for the proposition that a postal employee violates a citizen's Fourth Amendment rights by unlawfully entering her home. Therefore, Taitano is entitled to qualified immunity. *See*, *e.g.*, *United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990) ("for the conduct of a governmental party to be subject to the fourth amendment, the governmental party engaging in that conduct must have acted with the intent to assist the government in its investigatory or administrative purposes and not for an independent purpose.").

Second, Plaintiff argues that "the law was clearly established as early as 2012 that the [Supervisor] Defendants could be liable for culpable inaction because they knew about Taitano's pattern or practice of unconstitutional actions." Dkt. 56 at 33 (citing *Chavez v. United States*, 683 F.3d 1102, 1111 (9th Cir. 2012)). Plaintiff's claim, however, "cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." *Chavez*, 683 F.3d at 1109 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009)). Thus, a supervisor's mere knowledge of an unconstitutional act does not state a claim for relief. More importantly, Plaintiff has failed to submit or cite any authority for the proposition that any Supervisor Defendant committed a Fourth Amendment violation by failing to train or terminate Taitano. Therefore, the Court grants the Government's motion on Plaintiff's

Fourth Amendment claim because the Supervisor Defendants are at least entitled to qualified immunity.

C. **IIED**

"The tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).

In this case, Taitano argues that Plaintiff has failed to allege either extreme or outrageous conduct or severe emotional distress. Regarding the former, it is a close question whether Plaintiff's allegations state a claim for relief. Regarding the latter, Plaintiff implicitly concedes that she failed to adequately allege this element of her claim by citing evidence outside of the complaint to support her opposition. Dkt. 56 at 35 n.33. Therefore, the Court grants Taitano's motion to dismiss.

D. **Relief**

In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003).

In this case, Plaintiff moves for leave to amend in the event the Court grants either motion for judgment on the pleadings. Dkt. 36 at 35–36. The Court finds that the federal claims can not be saved by any amendment because the individuals are entitled to qualified immunity. Thus, the Court dismisses these claims with prejudice. The IIED

claim, however, might be cured by amendment, and the Court grants Plaintiff leave to amend this claim only.

### IV. ORDER

Therefore, it is hereby **ORDERED** that the Government's and Taitano's motions for judgment on the pleadings (Dkts. 51, 52) are **GRANTED**. Plaintiff's civil rights claims and negligence claim are **DISMISSED with prejudice**. Plaintiff's IIED claim is **DISMISSED without prejudice**, and Plaintiff is **GRANTED** leave to amend this claim. Plaintiff shall file an amended complaint no later than September 14, 2018.

Dated this 30th day of August, 2018.

BENJAMIN H. SETTLE
United States District Judge